IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERESA MACY,                                    Case No. 3:11-cv-01075-MA

          Plaintiff,                          OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

         Defendant.

BRUCE W. BREWER
419 Fifth Street
Oregon City, OR 97045

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

LISA GOLDOFTAS
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98105-7075

    Attorneys for Defendant

MARSH, Judge

Plaintiff Teresa Macy seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, this court affirms the decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits (DIB) on April 3, 2006, alleging disability beginning March 31, 2006. The claims were denied initially and on reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on October 29, 2008, at which plaintiff appeared with her attorney and testified. A Vocational Expert, Gary R. Jesky, also appeared and testified. On February 25, 2009, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review.

Plaintiff then appealed to the District Court, which issued an order reversing and remanding the case for further administrative proceedings on September 24, 2010. On remand, the ALJ was ordered to reassess the lay testimony of Glenn Macy; reassess the opinion of John E. Ellison, M.D.; reassess plaintiff's residual functional

capacity; and offer the plaintiff the opportunity for a new hearing. Tr. 287.

The ALJ conducted a new hearing on May 11, 2011. Plaintiff appeared with counsel and testified, as did Vocational Expert C. Kay Wise. At the hearing, plaintiff amended her alleged onset date of disability to October 23, 2007. The ALJ issued a second unfavorable decision on May 19, 2011. Plaintiff timely filed this action. Therefore, the ALJ's May 19, 2011 decision is the Commissioner's final decision subject to judicial review.

Plaintiff was 53 years old at the time of the second hearing and has completed the eleventh grade. Plaintiff has past relevant work as a tavern cook, a job that she held for many years. Plaintiff contends that she is disabled due to history of stroke, right shoulder pain, low back pain with mild degenerative disc disease, and obesity, among other symptoms.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. <u>See</u> <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 689 (9th Cir. 2009); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work

which exists in the national economy.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured.  42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her amended onset of disability date (October 23, 2007) through her date last insured (December 31, 2010).  See 20 C.F.R. §§ 404.1520(b), 404.1571 et seq.

At step two, the ALJ found that plaintiff had the following severe impairments:  history of stroke, right shoulder degenerative joint disease status post right rotator cuff surgical repair, low back pain with mild degenerative disc disease, and obesity.  See 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform a modified range of light work in that she is able to lift and carry 10 pounds frequently and 20 pounds occasionally, can sit for six hours in an eight-hour day, is restricted from standing or waking more than two hours per day, and is limited to

only occasional reaching above shoulder height with the right upper extremity.  See 20 C.F.R. §§ 404.1527, 404.1529.

At step four, the ALJ found plaintiff unable to perform any past relevant work.  See 20 C.F.R. § 404.1565.

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the claimant can perform.  See 20 C.F.R. §§ 404.1560(c), 404.1566. Accordingly, the ALJ concluded that plaintiff is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to find her depression and anxiety severe at Step Two; (2) the ALJ failed to find her impairments meet or equal a Listing at Step Three; (3) the ALJ failed to properly evaluate the opinions of Leslee Carter, Ph.D. and Dr. Ellison; (4) the ALJ failed to properly consider the lay witness testimony; and (5) the ALJ improperly relied on the VE's testimony.[1]

------

[1]According to Local Rule 4000-3, plaintiff's opening brief in a Social Security case is to "contain a statement of the specific issues presented for judicial review in a separate section under an appropriate heading."  Plaintiff's opening brief fails to comply with this rule.  Plaintiff's counsel is strongly encouraged to comply with LR 4000-3 and all Local Rules in future submissions.

5 - OPINION AND ORDER

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039.  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.; Valentine, 574 F.3d at 690.  The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.  Batson v. Comm'r of Soc. Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

### DISCUSSION

**I.    Step Two**

Plaintiff argues that the ALJ erred in failing to find that her depression and anxiety are severe impairments at Step Two.  In the decision, the ALJ concluded that plaintiff's depression and anxiety are medically determinable impairments, but do "not cause

more than minimal limitation in [plaintiff's] ability to perform basic mental work activities," and thus are nonsevere.   Tr. 290. The ALJ noted that plaintiff "has taken anti-depressant medication, but has not received other forms of treatment or engaged in mental health counseling."   Plaintiff appears to contend that the Step Two finding is erroneous because the ALJ failed to properly consider the opinion of Dr. Carter.

Plaintiff's argument fails.   The Step Two threshold is low. At Step Two, the ALJ must determine whether a claimant has one or more impairments that significantly limit his or her ability to conduct basic work activities.   Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005);   20 C.F.R. §§ 404.1520(c), 404.1521.

In this case, the ALJ resolved Step Two in plaintiff's favor, concluding that plaintiff had demonstrated impairments (history of stroke, right shoulder degenerative joint disease status post right rotator cuff surgical repair, low back pain with mild degenerative disc disease, and obesity) necessary to satisfy Step Two.   The ALJ continued the sequential decision making process until reaching a determination at Step Five.   Any error in failing to designate plaintiff's anxiety as not severe did not prejudice her at Step Two, as Step Two was resolved in her favor.   Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(any failure to list bursitis as severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four); Burch, 400 F.3d

at 682 (any error in omitting obesity from list of severe impairments at step two was harmless because step two was resolved in claimant's favor). Thus, any error in finding her depression and anxiety non-severe was harmless.

To the extent that plaintiff contends the ALJ failed to consider her alleged mental limitations in the RFC or failed to properly consider Dr. Carter's opinion, I address those issues below. See 20 C.F.R. § 404.1523 (once claimant has surmounted Step Two, the ALJ must consider the functional limitations imposed by all medically determinable impairments in the remaining steps of the decision).

## II. __Step Three__

At Step Three, the ALJ concluded that plaintiff did not present medical evidence to meet or equal Listings 1.02, 1.04, 11.04 or any other Listing. I reject plaintiff's conclusory argument that the ALJ erred by summarily finding that plaintiff has not met a Listing at Step Three. The record demonstrates that the ALJ thoroughly discussed the medical evidence at Step Two and again when evaluating plaintiff's RFC.

Moreover, where a claimant has not presented a plausible theory of how an impairment meets or equals a particular Listing or identified evidence that a Listing is satisfied, and the ALJ has thoroughly evaluated the evidence, an extensive discussion of the

Listings is not required.  Burch, 400 F.3d 676, 683 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

In her briefing to this court, plaintiff has not identified which particular Listing she purports to meet, nor has plaintiff identified a plausible theory as to how her impairments combine to equal a Listing impairment.  Accordingly, plaintiff has not met her burden at Step Three.  Burch, 400 F.3d at 683.  I find no error in the ALJ's Step Three analysis.

## III. Plaintiff's RFC

### A.   Physician's Opinions

In general, a treating physician's opinion is given more weight than the opinion of a non-treating physicians.  Turner v. Commissioner of Soc. Security, 613 F.3d 1217, 1223 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  If a treating physician's opinion is not given controlling weight because it is not well-supported, or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. § 404.1527(d)(2).  Id.

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

### 1. Dr. Carter

Plaintiff argues that the ALJ erred in assessing the opinion of Dr. Carter, her treating psychologist. According to plaintiff, the ALJ erroneously rejected Dr. Carter's opinion that plaintiff has severe mental issues which prevent her from working.

Dr. Carter met with plaintiff on October 25, 2006, at which time a pain questionnaire was completed. Tr. 253. Dr. Carter's notes reflect that plaintiff missed an appointment on December 7, 2006. Dr. Carter then completed a Mental Residual Functional Capacity Assessment questionnaire provided by plaintiff's attorney. Tr. 264-66. Dr. Carter did not date her signature, but the MRFC is

10 - OPINION AND ORDER

marked as received (presumably by plaintiff's counsel) on November 7, 2008.  Tr. 266.  In the 2008 MRFC, Dr. Carter opined that plaintiff has suffered marked depression since her back injury in 2006.  Dr. Carter also opined that plaintiff is markedly limited in the areas of attention and concentration for extended periods, her ability to perform activities within a schedule, and her ability to perform at a consistent pace due to her psychological symptoms.  Tr. 265.

When considering plaintiff's RFC, the ALJ gave Dr. Carter's opinion little weight because it was based on plaintiff's subjective complaints, was not supported by objective findings, and was inconsistent with the record as a whole.  Tr. 293, 295.  I find that the ALJ has provided clear, specific and legally sufficient reasons for rejecting Dr. Carter's opinion.

Plaintiff submits that the ALJ erroneously rejected Dr. Carter's opinion because it was not based on objective findings. Plaintiff argues that Dr. Carter was not required to support her opinion with objective findings because "patient history is a medically acceptable diagnostic tool."  Plaintiff's unsupported contention is undermined by the regulations and case law.  See, e.g., Bayliss, 427 F.3d at 1217 (ALJ properly rejected doctors' opinions based on subjective complaints and not supported by clinical evidence); 20 C.F.R. § 404.1508 ("A physical or mental

impairment must be shown by signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

As noted above, plaintiff appears to have had limited contact with Dr. Carter, and Dr. Carter's treatment notes do not reveal any clinical findings, and thus, the ALJ properly discounted the opinion on this basis. Moreover, the ALJ properly rejected Dr. Carter's opinion because it was based on plaintiff's discredited subjective statements. Notably, plaintiff does not challenge the ALJ's adverse credibility finding. To be sure, an ALJ may reject a doctor's opinion that is based on an claimant's properly discredited subjective complaints. Batson, 359 F.3d at 1195.

Lastly, substantial evidence supports the ALJ's conclusion that Dr. Carter's opinion is inconsistent with the record as a whole. As the ALJ discussed, Dr. Carter's opinion that plaintiff had difficulty with attention and concentration was inconsistent with the testimony of plaintiff's husband, who stated that plaintiff had no difficulty concentrating and does an excellent job with written and verbal instructions. Tr. 129, 295. The ALJ also noted that Dr. Carter's opinion that plaintiff was significantly depressed was contrary to plaintiff's own hearing testimony, where plaintiff described no limitations from depression. And, as the ALJ discussed, Dr. Carter's opinion that plaintiff suffers moderate limitations in social interaction was undermined by plaintiff's hearing testimony where she described regular, weekly outings with

friends.   The ALJ's findings are more than adequately supported by substantial evidence in the record.   <u>Batson</u>, 359 F.3d at 1195; <u>Morgan</u>, 169 F.3d at 602.   I find the ALJ properly discounted Dr. Carter's opinion.

### 2.   Dr. Ellison

Dr. Ellison performed a comprehensive consultative orthopedic examination on December 27, 2008.   Tr. 267-78.   Dr. Ellison conducted a number of range of motion and neurologic tests and offered the following assessment and diagnoses:   chronic low back pain radiating into right leg, with right lumbar scoliosis and a history of degenerative disc disease; history of stroke, resolved; hypertension; obesity; GERD; chronic depression responding to treatment; hyperlipidemia.   Dr. Ellison also completed a Medical Source Statement in which he opined that plaintiff is frequently able to lift up to 10 pounds, and occasionally lift up to 20 pounds; that plaintiff can sit for two hours and stand and walk for 10 minutes without interruption; and that plaintiff can sit for eight hours total, stand for one hour in an eight hour work day, and walk for one hour in an eight hour work day.[2]   Tr. 273.

---

[2]On the Medical Source Statement completed by Dr. Ellison, he indicated that plaintiff is able to stand and walk for *one minute* in an eight hour day.  Tr. 273.   Dr. Ellison indicated immediately prior on the form that plaintiff could stand and walk for *10 minutes* without interruption.  Thus, I find the ALJ's interpretation of Dr. Ellison's opinion that plaintiff is able to stand and walk for one hour in an eight hour day to be reasonable.   Tr. 295.   Moreover, both parties have adopted the

The ALJ gave Dr. Ellison's opinion "some weight." The ALJ adopted Dr. Ellison's opinion with respect to plaintiff's lifting and sitting restrictions, and the ALJ interpreted the standing and walking restrictions into the RFC that plaintiff is "restricted from standing or walking for more than two hours per workday." The ALJ rejected Dr. Ellison's limitations concerning certain nonexertional limitations including the use of foot controls and environmental limitations, such as humidity, wetness, fumes, dust, odors, temperature, and vibration. Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Ellison's opinion. Plaintiff seemingly argues that the ALJ should have interpreted Dr. Ellison's standing and walking limitations more restrictively. I disagree.

The ALJ found Dr. Ellison's standing and walking restrictions to be consistent with the record as a whole. The ALJ detailed that a two hour standing and walking restriction was consistent with the objective medical evidence and plaintiff's testimony. As the ALJ discussed, plaintiff's testimony concerning standing and walking was conflicting, noting that plaintiff alternately described being able to walk only one block and also being active for two hours before needing to rest. At the hearing, plaintiff testified that she was regularly walking in the neighborhood and on a treadmill at

---

ALJ's interpretation of Dr. Ellison's Medical Source Statement. See Plaintiff's Brief (ECF #18) p. 9; Defendant's Brief (ECF #19) p. 11.

the gym in an effort to lose weight.  Tr. 343.  Again, I note that plaintiff does not challenge the ALJ's adverse credibility determination.  Thus, I find the ALJ's interpretation of Dr. Ellison's standing and walking restriction reasonable and supported by substantial evidence.

Additionally, the ALJ's conclusion that the standing and walking restriction is consistent with the objective medical evidence in the record also is supported by substantial evidence.  While plaintiff does have degenerative disc disease, as the ALJ noted she has reported waxing and waning symptoms of low back pain through the years, and she has had intermittent success with physical therapy.  Tr. 216, 223, 227.  Plaintiff's MRI's have indicated relatively mild degenerative changes, with no new findings in 2008.  Tr. 230.

Contrary to the plaintiff's suggestion, the ALJ adequately explained the rejection of the bulk of Dr. Ellison's nonexertional limitations.  As the ALJ correctly noted, Dr. Ellison's Medical Source Statement does not include any clinical findings to support the alleged nonexertional environmental limitations.  And, as the ALJ correctly noted, neither plaintiff's testimony nor her medical records include complaints of exposure to dust, fumes, temperature extremes, noise or vibration as opined by Dr. Ellison.  Thus, the ALJ properly rejected the bulk of Dr. Ellison's nonexertional limitations.

As the ALJ correctly concluded, there is ample evidence in the record to the support plaintiff's over-the-shoulder reaching limitation with her upper right extremity. Plaintiff underwent surgery to repair a right rotator cuff tear and impingement in 2009. Therefore, the ALJ properly included this nonexertional limitation into plaintiff's RFC.

In short, I find the ALJ has provided specific and legitimate reasons supported by substantial evidence in the record for partially rejecting Dr. Ellison's opinion.

## IV. **Lay Witness Testimony**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. Valentine, 574 F.3d at 694.

In this case the ALJ discounted the lay testimony of Glenn Macy, plaintiff's husband, because it was inconsistent with the evidence of record and contained internal inconsistencies. The ALJ detailed that Mr. Macy indicated in his third party report that plaintiff could no longer clean the house, do laundry, or walk the dog. Tr. 125. The ALJ found this inconsistent with his later

statement that plaintiff did all of the house cleaning (except mopping the floors and scrubbing the tub) and all of the laundry. Additionally, the ALJ noted that Mr. Macy's statement that plaintiff no longer is able to walk the dog inconsistent with plaintiff's testimony that she walks the dog every day for 20 to 30 minutes. And, the ALJ found Mr. Macy's description of plaintiff as often sitting in a chair and watching television inconsistent with plaintiff's many activities, such as driving a car, shopping, dusting, cleaning, going out with friends, and managing finances. I conclude that these inconsistencies are supported by substantial evidence, and are germane to Mr. Macy. Accordingly, I find no error in the ALJ's assessment of the lay testimony. Valentine, 574 F.3d at 694.

## V.    VE Testimony at Step Five

At step five of the sequential evaluation, the burden shifts to the Commissioner to establish that there are jobs in the national economy that the claimant can do. Andrews, 53 F.3d at 1043. The ALJ must determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions. Tackett, 180 F.3d at 1103-04.

The Commissioner can satisfy this burden in two ways: (1) by the testimony of a vocational expert (VE); or (2) by reference to the Medical-Vocational Guidelines (the "grids"). Tackett, 180 F.3d at 1100-01; 20 C.F.R. pt. 404, subpt. P, app.2. "When the grids do

not completely describe the claimant's abilities and limitations, such as when the claimant has both exertional and nonexertional limitations, ... the grids are inapplicable and the ALJ must take the testimony of a VE." Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002).

In this case, at Step Five, the ALJ noted that plaintiff was 53 at the time of the ALJ's final decision, and thus was "a person closely approaching advanced age" under the regulations. 20 C.F.R. § 404.1563(d). The ALJ found that plaintiff's ability to perform all the requirements of light work was impeded by additional limitations. At the second hearing, the ALJ again took testimony from a vocational expert.

At the hearing, the ALJ inquired of VE Wise whether there were jobs that exist in national economy for a hypothetical individual with the following limitations: could lift 20 pounds occasionally and 10 pounds frequently; and could stand or walk for a total of six hours in a work day; sit for a total six hours in a work day; and was limited to only occasional over-the-shoulder reaching with the right upper extremity. Tr. 345.

Vocational Expert Wise testified that the hypothetical described a broad range of light duty work, and agreed with the testimony of the VE at the prior hearing that such jobs would include small products assembly, cashier and courier. Tr. 346.

The ALJ then added the additional restriction that the

hypothetical individual is limited in standing and walking to no more than two hours in a work day.  Tr. 347.  VE Wise responded that this restriction would rule out the courier position, but that the cashier and small products assembly are "acceptable due to the fact that they offer a sit, stand option."  Tr. 347.

Plaintiff contends that the ALJ erroneously applied the "light work" grid instead of the "sedentary work" grid.  According to plaintiff, because the sedentary grid directs a finding of "disabled" under the Medical-Vocational Guidelines ("the grids"), the ALJ erroneously sought testimony from a VE.  The Commissioner responds that the ALJ properly relied upon the VE's testimony.  The Commissioner is correct.

Under the regulations, light work "involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  If a claimant has limited use of an upper extremity, the occupational base pertaining to light work is eroded.  See SSR 83-12.  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles ... Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a).

Here, the ALJ's lifting restrictions represent light work under the regulations.  However, the plaintiff's additional

reaching restriction erodes the occupational base, and in such circumstances, it is advisable that an ALJ consult a vocational expert.   SSR 83-12 (where a claimant's exertional base falls between two categories, ALJ should consult a VE).   I am not convinced by plaintiff's argument that due to plaintiff's standing and walking restrictions alone, the ALJ was required to apply the sedentary occupational base.[3]   To be sure, plaintiff's lifting restrictions fall in the light work category – a finding plaintiff does not challenge.   Moreover, an ALJ may not rely on the grids if a claimant's limitations do not fully fall within a given category. Tackett, 180 F.3d at 1102 (an ALJ may rely upon the grids at Step Five only when they "completely and accurately" represent all of a claimant's limitations); accord Thomas, 278 F.3d at 960; Moore, 216 F.3d at 864.   As SSR 83-12 directs, where a claimant falls between two grids, consultation with a VE is appropriate.   And finally, plaintiff's over-the-shoulder reaching restriction, a nonexertional limitation, indicated the need for VE testimony.   The evidence in the record before me clearly supports the ALJ's decision to use a VE, and that rational decision must be upheld.   Moore, 216 F.3d at

---

[3]I note that at the first hearing, Vocational Expert Jesky testified that plaintiff's standing and walking limitations indicated an occupational base between sedentary and light work, and identified the jobs of small products assembler and cashier (DOT numbers 731.687-034 and 211.462-010 respectively) occurring in significant numbers that could be performed.  Tr. 51, 53.

871.    Accordingly, I conclude that the ALJ did not err in relying upon the VE's testimony.[4]

Therefore, because the VE identified jobs existing in significant numbers in the national economy that claimant could perform which included all of the limitations supported by substantial evidence in the record, the ALJ's Step Five determination is affirmed.

### CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.    This action is DISMISSED.

IT IS SO ORDERED.

DATED this _13_ day of NOVEMBER, 2012.

Malcolm F. Marsh
United States District Judge

---

[4]Plaintiff also complains that the VE described that 50 to 60 percent of light jobs provide a sit/stand option, which plaintiff contends is inconsistent with the DOT. A review of the transcript reveals that the VE's statement was in response to a question from plaintiff's attorney concerning light level jobs in general, and was not in response to a hypothetical. Tr. 350. This portion of the VE's testimony was inconsequential to the ultimate nondisability determination, and has no impact my assessment of the ALJ's Step Five determination. Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012).